

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-12-2006

# Lomanto v. NLRB

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4541

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Lomanto v. NLRB" (2006). *2006 Decisions.* Paper 463.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/463

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 05-4541 & 05-5511 consolidated

\* DAVID J. LOMANTO,
Petitioner
vs.

NATIONAL LABOR RELATIONS BOARD,
Respondent

\*\* \*\*\* BOARDWALK REGENCY CORPORATION d/b/a Caesars Atlantic City,
Intervenor-Respondent

\* (Amended as per the Clerk's 12/16/05 Order)
\*\* (Pursuant to the Court's 3/13/06 Order)
\*\*\* (Amended as per the Clerk's 4/3/06 Order)

On Petition for Review of an Order of
the National Labor Relations Board
(Case 4-CA-32937)

Submitted Under Third Circuit LAR 34.1(a)
September 11, 2006
Before: FISHER, ALDISERT AND WEIS, CIRCUIT JUDGES

Filed:   September 12, 2006

OPINION

1

PER CURIAM.

David LoManto seeks review of a decision and order of the National Labor Relations Board ("the Board") dismissing his unfair labor practices complaint against Boardwalk Regency Corporation.[1] LoManto was employed by Caesars as a dealer in its Atlantic City casino from 1999 to 2004. In late 2003, Teamsters Union Local 331 began organizing dealers at Caesars and other area casinos. LoManto was involved in the campaign in various ways; including, signing a union authorization card, attending meetings, and distributing literature to coworkers. The campaign gained momentum in January 2004 and, by its end, approximately 200 of Caesars' 800 dealers had signed union authorization cards. However, the campaign ended without an election petition being filed. Near the end of the campaign, LoManto was involved in two heated conflicts with casino customers who were gambling at his table. After the first incident on February 21, 2004, Caesars issued a written warning to LoManto that another such incident would result in his dismissal. Before this warning was delivered to LoManto, however, a second incident occurred on March 5, 2004. LoManto was subsequently placed on investigatory suspension and was discharged shortly thereafter.

After his termination, LoManto filed a charge with the Board, alleging that Caesars had violated the National Labor Relations Act ("the Act"), 29 U.S.C.

_____

[1] Boardwalk Regency Corporation does business as "Caesars Atlantic City" in Atlantic City, New Jersey. For ease of reference, we will refer to Boardwalk Regency as "Caesars" in this opinion.

§§ 158(a)(1), (3), by making anti-union comments, issuing threats of reprisal for union activity, taking disciplinary action against him and discharging him for his union activity. The Regional Director of the Board issued a complaint against Caesars, and a trial was held before an Administrative Law Judge ("ALJ") during which both Caesars and LoManto (through General Counsel for the Board) presented evidence. After the proceedings concluded, the ALJ issued a decision finding that Caesars had not violated the Act and recommending that the complaint be dismissed. LoManto filed an extensive list of exceptions, and Caesars filed an answering brief. In a decision and order issued on June 30, 2005, the Board adopted the ALJ's recommended order and dismissed LoManto's complaint. After the Board denied LoManto's motion for reconsideration, LoManto filed this petition for review, requesting that the Board's order be set aside.[2]

The Board had jurisdiction under 29 U.S.C. § 160(a). We have jurisdiction pursuant to 29 U.S.C. § 160(f). We review the Board's findings to determine whether they are supported by substantial evidence in the record. See 29 U.S.C. § 160(f); Hunter Douglas, Inc. v. N.L.R.B., 804 F.2d 808, 812 (3d Cir. 1986) (citing Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 487-91 (1951)).

---

[2] LoManto also filed a petition for review in the United States Court of Appeals for the District of Columbia Circuit, which was transferred to this court on December 23, 2005 and docketed at C.A. No. 05-5511. Both cases have been consolidated for disposition. We granted Caesars' motion for leave to intervene.

3

Under section 8(a)(1) of the Act, it is an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of [their rights]" to engage in union organizing activities. See 29 U.S.C. § 158(a)(1). The Act also prohibits an employer from encouraging or discouraging membership in any labor organization. See id. at § 158(a)(3). In order to prove a violation of the Act, General Counsel must first establish that opposition to union activity was a "motivating factor" in the employer's decision to discharge or take other adverse action against an employee. See N.L.R.B. v. Omnitest Inspection Servs., Inc., 937 F.2d 112, 122 (3d Cir. 1991) (internal citation omitted). The timing of the action, whether the employer knew about the employee's union activity or was hostile towards the union, and the employer's reasons, if any, for the action are all relevant to the determination whether an unlawful motive exists. See id. If and when this showing is made, the burden shifts to the employer to show by a preponderance of the evidence that it would have taken the same action even if the employee had not engaged in protected conduct. See id. (citing N.L.R.B. v. Transp. Mgmt. Corp., 462 U.S. 393, 401-03 (1983)).

The trial before the ALJ spanned three days and included testimony from LoManto, eight Caesars employees (mostly management level), and a casino patron who was involved in the February 21st incident. In regard to the customer incidents, LoManto testified that customers had been committing rules infractions and he had merely done his job by enforcing the rules. LoManto also testified that the customers were verbally

4

abusive to him. Testimony from Caesars' witnesses painted an entirely different picture, uniformly portraying LoManto's behavior as bullying and aggressive towards the customers. Caesars' witnesses also testified that LoManto had disobeyed a direct order from his immediate supervisor to continue dealing during the March 5th incident.

In a detailed decision, the ALJ emphasized that credibility was a key consideration in the case, as LoManto's uncorroborated testimony constituted the bulk of the General Counsel's evidence. The ALJ discredited LoManto's version of events, based both on his assessment of LoManto's demeanor and his observation that LoManto shifted his story throughout the trial. Crediting the testimony of Caesars' witnesses, the ALJ found that management had never made anti-union or threatening comments as alleged by LoManto. The ALJ also found that the General Counsel had failed to sustain his burden of proving that anti-union animus motivated Caesars' warning, suspension, or termination of LoManto, because there was no credited evidence that management knew about LoManto's involvement in the union campaign. The ALJ also credited Caesars' version of events surrounding the customer conflicts and found that LoManto's written warning, suspension, and termination were the direct results of his inappropriate behavior.

On appeal, LoManto contends that the Board's credibility determinations were flawed, that each witness's testimony was self-contradicting, and that the ALJ failed to recognize that some testimony from Caesars' witnesses actually supported his case. We are not persuaded by these assertions, which are unsupported by the record. After

5

reviewing the record, including LoManto's numerous exceptions, we find no fault with the Board's credibility determinations. See Edgewood Nursing Center, Inc. v. N.L.R.B., 581 F.2d 363, 365 (3d Cir. 1978). See also N.L.R.B. v. Craw, 565 F.2d 1267, 1270 (3d Cir. 1977) (reviewing court cannot displace Board's selection between two conflicting views of the evidence). We hold that the Board's findings are supported by substantial evidence in the record and will, accordingly, deny LoManto's petition for review.